IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 2:13-CR-21-RWS-JCF |
| AMY B. WILLIAMS, | : | |

## REPORT AND RECOMMENDATION

This case is before the Court on Defendant's Motion To Dismiss Superseding Indictment (Doc. 65).

## Procedural History

An Indictment filed July 16, 2013 (Doc. 1) charged Defendant with one count of conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1344 and 1349 (Count 1) and six counts of bank fraud in violation of 18 U.S.C. § 1344 (Counts 2 through 7). The case was certified ready for trial on November 14, 2013 (*see* Doc. 16) and after multiple requests for continuances by Defendant (*see* Docs. 20, 29, 32, 51), the Court has scheduled the case for trial on December 7, 2015 (*see* August 10, 2015 and October 23, 2015 docket entries).[1]

---

[1] The Government filed motions in limine before the then-scheduled trial date of September 1, 2015. (*See* Docs. 50, 53). District Judge Richard W. Story held a hearing on those motions on July 31, 2015 and took them under advisement. (*See* Doc. 54).

On September 1, 2015, the Government filed a Superseding Indictment (Doc. 58), again charging Defendant with one count of conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1344 and 1349 (Count 1) and six counts of bank fraud in violation of 18 U.S.C. § 1344 (Counts 2 through 7).  Count 1 charges that from February 2007 through August 2008, Defendant conspired "with L.L. and D.W. and with other persons known and unknown to the Grand Jury to commit bank fraud by knowingly executing and attempting to execute a scheme and artifice to defraud First Coweta Bank, and to obtain moneys and funds owned by First Coweta Bank, by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, in violation of" 18 U.S.C. §§ 1344 and 1349.  (*See* Doc. 58 at ¶¶ 1-15).  Counts 2 through 7 charge that from February 2007 through August 2008, Defendant "knowingly executed and attempted to execute a scheme and artifice to defraud First Coweta Bank, and to obtain moneys and funds owned by First Coweta Bank, by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts" in violation of 18 U.S.C. § 1344, based on actions described below.  (*Id.* at ¶¶ 16-19).  Defendant then filed a motion to dismiss the Superseding Indictment, in which she also moves to strike surplusage from the indictment. (Doc. 65).  The Government responded to that motion (Doc. 69), and Defendant

filed a reply (Doc. 73).  With briefing complete, the undersigned now turns to the merits of Defendant's motion.

**Discussion**

Defendant moves to dismiss the Superseding Indictment pursuant to FED. R. CRIM. P. 12(b)(3)(B)(ii) as multiplicitous because Counts 2 through 7 "charge the same offense in more than one count."  (Doc. 65 at 1-2).  Defendant also "seeks to strike the language 'and by omission of material facts' from Counts One through Seven as prejudicial surplusage pursuant to" Rules 7 and 12.  (*Id.* at 2).

## I.     Motion To Dismiss As Multiplicitous

Defendant contends that Counts 2 through 7, all of which allege that Defendant committed bank fraud in violation of 18 U.S.C. § 1344, are multiplicitous because they charge multiple acts in furtherance of a single scheme and therefore charge a single offense in more than one count.  (Doc. 65 at 2-3).

### A.     Applicable Standards For Determining Multiplicity

"An indictment is multiplicitous, and thus violates the Double Jeopardy Clause of the Fifth Amendment 'if it charges a single offense in more than one count.' "  *United States v. Ford*, 784 F.3d 1386, 1392 (11th Cir. 2015) (quoting *United States v. Williams*, 527 F.3d 1235, 1241 (11th Cir. 2008)).  "A multiplicitous indictment not only subjects the defendant to numerous sentences for one offense, but also prejudice[s] the defendant and confuse[s] the jury by

suggesting that not one but several crimes have been committed." *Williams*, 527 F.3d at 1241 (internal quotation omitted). "A multiplicitous indictment therefore violates the principles of double jeopardy because it gives the jury numerous opportunities to convict the defendant for the same offense." *Id.*

"To determine whether an indictment is multiplicitous, the Court first determines the 'allowable unit of prosecution.' " *United States v. Jones*, No. 1:05-CR-617-WSD/AJB, 2006 U.S. Dist. LEXIS 101614, at *17 (N.D. Ga. Dec. 21, 2006), *adopted by* 2007 U.S. Dist. LEXIS 51858 (N.D. Ga. June 18, 2007). "The Court starts by deciding if the proper unit of prosecution can be determined from the language of the statute." *Id.* If the "unit of prosecution" is not clear from the face of the statute, "[t]he 'unit of prosecution' test looks at congressional intent and asks '[w]hat Congress has made the allowable unit of prosecution under a statute which does not explicitly give the answer.' " *Id.* (quoting *Bell v. United States*, 349 U.S. 81, 81 (1955)). Finally, "courts also determine the unit of prosecution by reference to the conduct alleged, applying the following rule: 'Whether a transaction results in the commission of one or more offenses is determined by whether separate and distinct acts made punishable by law have been committed.' " *Id.* at *19-20 (quoting *Williams v. United States*, 385 F.2d 46, 47 (5th Cir. 1967)). "The principle underlying this rule is that the 'unit of prosecution' for a crime is the *actus reus*, the physical conduct of the defendant." *Id.* at *20.

Here, Defendant is charged with bank fraud, in violation of 18 U.S.C. § 1344, which provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>> (1) to defraud a financial institution; or
>> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. "The unit of the offense created by § 1344 is each execution or attempted execution of the scheme to defraud, not each act in furtherance thereof." *United States v. De La Mata*, 266 F.3d 1275, 1287 (11th Cir. 2001) (citing *United States v. Molinaro*, 11 F.3d 853, 856-60 (9th Cir. 1992) and *United States v. Longfellow*, 43 F.3d 318, 323 (7th Cir. 1995)).  Under the bank fraud statute, "[e]ach component act of a scheme to defraud is not a separate violation because otherwise a single criminal transaction could result in an infinite number of prosecutable offenses having no particular relevance to the purpose of the bank fraud statute." *De La Mata*, 266 F.3d at 1287.  "Accordingly, a bank fraud offense is complete upon the 'execution,' or attempted execution of the scheme." *Id.* "Yet, . . . a single scheme can be executed a number of times, and a defendant may be charged in separate counts for each 'execution' of the scheme to defraud." *Id.*; *see also United States v. Sirang*, 70 F.3d 588, 595 (11th Cir. 1995) ("Under 18

5

U.S.C. § 1344, a defendant may be charged in separate counts for each 'execution' of the scheme to defraud."); *United States v. Barnhart*, 979 F.2d 647, 651 (8th Cir. 1992) ("In granting the broad effect the statute is to be accorded, courts have recognized that each execution of a scheme to defraud constitutes a separate indictable offense.").  "Thus, the first step in determining the number of offenses is to ascertain the contours of the scheme; once that is done, each execution of that scheme is a separate offense."  *Barnhart*, 979 F.2d at 651.

### B.    The Scheme As Described In The Superseding Indictment

The Superseding Indictment alleges the following in support of the conspiracy count:  Defendant was the sole owner of United International Mortgage Corporation (UIM), "which was in the business of providing short-term rehabilitation and construction loans to builders."  (Doc. 58 at ¶ 2).  Defendant and UIM owed more than $1 million to a financial institution called NBank.  (*Id.*).  In March 2007, UIM obtained a $3 million line of credit from First Coweta Bank ("First Coweta" or "the Bank") to finance future loans for builders.  (*Id.* at ¶ 3).  On April 16, 2007, UIM closed three construction loans for one of its customers, Mainstreet Builders, Inc. so that Mainstreet Builders could construct new houses on Jackson Street in Suwanee, Georgia ("the Jackson Street project").  (*Id.* at ¶ 4).  Mainstreet Builders executed a deed to secure debt, giving UIM a lien on the property and all improvements to be constructed thereon ("Jackson Street

6

collateral"). (*Id.* at ¶ 6). UIM borrowed on its line of credit with First Coweta to fund these construction loans. (*Id.* at ¶ 7). On the same day, Defendant assigned UIM's interest in the Jackson Street collateral to First Coweta Bank and "represented to First Coweta Bank that the proceeds of these three construction loans to Mainstreet Builders would be used solely to increase the value of the Jackson Street property[.]" (*Id.* at ¶ 9).

On April 19, 2007, NBank informed Defendant that two checks issued to NBank in the combined amount of $600,000 by UIM had bounced and demanded replacement with certified funds immediately. (*Id.* at ¶ 10). A few hours later, Defendant "caused and directed unindicted co-conspirator L.L. to forge the signature of D.D. on three documents entitled 'Assignment of Funds," and "then caused those fraudulent documents to be faxed to First Coweta Bank, in order to get First Coweta Bank to transfer loan proceeds intended for the Jackson Street project to an account that [Defendant] controlled at Gwinnett Community Bank." (*Id.* at ¶ 11). First Coweta then wire transferred more than $1.4 million in loan proceeds to an account controlled by Defendant, "intended to fund the Jackson Street project." (*Id.* at ¶ 12). Defendant then "embezzled, misapplied, and converted the majority of the money to her own use, and to the use of [UIM], by using the money to purchase a cashier's check for $1,190,343.30 payable to NBank and by transferring $60,000 to her personal bank account[.]" (*Id.* at ¶ 14).

7

Defendant "repeatedly made false and fraudulent representations to First Coweta Bank in an effort to lull the Bank into a false sense of security and thereby delay the Bank's complaints to law enforcement." (*Id.* at ¶ 15).

In support of Counts 2 through 7, i.e., the bank fraud counts, the Superseding Indictment incorporates the allegations set forth in paragraphs 2 through 15 in support of the conspiracy count (*see* Doc. 58 at ¶ 16) and then charges:

> 17.   From in or about February 2007 through in or about August 2008,
> [Defendant], aided and abetted by others known and unknown to the Grand Jury, knowingly executed and attempted to execute a scheme and artifice to defraud First Coweta Bank, and to obtain moneys and funds owned by First Coweta Ban, by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts.
> 18.   The object and purpose of the scheme and artifice to defraud was for [Defendant] to unjustly enrich herself and the United International Mortgage Corporation at the expense of First Coweta Bank.

(Doc. 58 at ¶¶ 17, 18).  The indictment then alleges that Defendant "executed and attempted to execute the scheme and artifice to defraud in the following ways, on or about the dates alleged," as set forth in Counts Two through Seven, "[a]ll in violation of Title 18, United States Code, Sections 1344 and 2." (*Id.* at ¶ 19). Specifically, those Counts, set out in a table as part of paragraph 19 of the Superseding Indictment, allege the following:

| Count | Date | Description |
|-------|------|-------------|
| 2 | 04/19/07 | Defendant WILLIAMS caused and directed unindicted co-conspirator L.L. to forge the signature of D.D. on three documents entitled "Assignment of Funds," and defendant WILLIAMS then caused those documents to be faxed to First Coweta Bank. |
| 3 | 04/19/07 | At the direction of defendant WILLIAMS, $1,190,343.30 of the loan proceeds intended to fund the Jackson Street project was used to purchase Gwinnett Community Bank cashier's check #4887 payable to NBank, and at the direction of defendant WILLIAMS, unindicted co-conspirators L.L. and D.W. delivered that cashier's check to NBank to pay a debt owed by defendant WILLIAMS and United International Mortgage Corporation. |
| 4 | 04/20/07 | At the direction of defendant WILLIAMS, $10,000 of the loan proceeds intended to fund the Jackson Street project was transferred to the personal account of Amy B. Williams at Gwinnett Community Bank (account # 2705). |
| 5 | 04/20/07 | At the direction of defendant WILLIAMS, $50,000 of the loan proceeds intended to fund the Jackson Street project was transferred to the personal account of Amy B. Williams at Gwinnett Community Bank (account # 2705). |
| 6 | 11/14/07 | Defendant WILLIAMS caused misleading draw sheets and photos to be emailed to First Coweta Bank and falsely and fraudulently represented that those documents accurately reflected the status of the Jackson Street project. |
| 7 | 11/15/07 | Defendant Williams caused an email to be sent to First Coweta Bank, which falsely and fraudulently stated that Lot A was 40% complete, Lot B was 80% complete, and Lot C was 71% complete. |

(*Id.*).

C.   **Analysis**

Defendant asserts that "the acts alleged in Counts Two through Seven were each in furtherance of a single execution of the alleged scheme to defraud one

financial institution (First Coweta Bank) of one disbursement of funds (the 'more than $1.4 million in loan proceeds intended to fund the Jackson Street Project' [Doc. 58 ¶ 12])." (Doc. 65 at 3). The Government counters that paragraph 17 of the superseding indictment alleges that Defendant "knowingly executed and attempted to execute a scheme to defraud First Coweta Bank, and to obtain moneys and funds owned by First Coweta Bank, by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts," and that "Counts 2 through 7 allege separate executions of the scheme[.]" (Doc. 69 at 5). The undersigned finds merit in Defendant's position.

"A difficult conceptual question arises in section 1344 bank fraud cases as to whether particular transactions constitute an 'execution' of a scheme or merely a component of such execution." *Sirang*, 70 F.3d at 595 (citing *United States v. Lemons*, 941 F.2d 309, 317 n.5 (5th Cir. 1991)). "The question, then, is what constitutes an 'execution' of the scheme" *De La Mata*, 266 F.3d at 1288, and "[d]etermining exactly what constitutes an 'execution' of a scheme is difficult." *Longfellow*, 43 F.3d at 323. " "Ultimately, the decision of whether a particular transaction is an 'execution' of the scheme or merely a component of the scheme will depend on several factors including the ultimate goal of the scheme, the nature of the scheme, the benefits intended, the interdependence of the acts, and the number of parties involved." *De La Mata*, 266 F.3d at 1288; *see also Sirang*, 70

F.3d at 595 (explaining that "[r]elevant factors in determining whether there are multiple executions are the number of banks involved, the number of transactions, and the number of movements of money."); *Longfellow*, 43 F.3d at 323 ("Most courts considering the issue of whether an action was an 'execution' have applied an 'interrelatedness' standard in deciding what parts of a scheme are executions. The ultimate goal of the scheme, the nature of the scheme, the benefits intended, the interdependence of the acts, the number of parties involved and many other individual factors are all considered.").

Here, as described in the Superseding Indictment, the alleged scheme to defraud First Coweta Bank involved submitting fraudulent documents to First Coweta Bank to obtain loan proceeds to be used for purposes other than for the construction of the Jackson Street project, contrary to the purpose represented to First Coweta Bank, i.e., "to increase the value of the Jackson Street property [under construction], which was being assigned to First Coweta Bank" as collateral. (*See* Doc. 58 at ¶¶ 8-15, 19). The scheme at issue involved a loan from one bank, First Coweta Bank, and one transfer of loan proceeds, i.e., "more than $1.4 million," to an account controlled by Defendant on one day, April 19, 2007 for her use of those proceeds for purposes other than what had been represented to the Bank. (*See id.*). Count 2 arguably alleges an execution of that scheme, i.e., the submission of fraudulent documents intended to cause the Bank to transfer loan proceeds to

11

Defendant's control.  *See, e.g.*, *United States v. Brandon*, 17 F.3d 409, 421-23 (1st Cir. 1994) (agreeing with the government's position "that each transaction in which Bay Loan provided a mortgage (or end loan) to a buyer on the basis of a fraudulent representation of a down payment constitutes a single, independent execution of the scheme to defraud").  The undersigned finds that the actions alleged in Counts 3 through 7, however, were not separate executions of the scheme to defraud the Bank, but instead, were acts in furtherance of that scheme and are therefore multiplicitous.

In ascertaining "the contours of the scheme," *Barnhart*, 979 F.2d at 651, and determining whether the multiple bank fraud counts charge separate executions of a scheme to defraud or whether they simply allege acts in furtherance of the scheme and are therefore multiplicitous, the undersigned has found several cases instructive.  For example, in *United States v. Lilly*, 983 F.2d 300 (1st Cir. 1992), the defendant was charged with 29 counts of bank fraud arising from his efforts to obtain a loan from a bank, by submitting fraudulent documents concerning 29 mortgages he assigned to the bank.  *Id.* at 302.  The court found that the facts alleged in the multiple counts "relate to the defrauding of a single bank in connection with a single loan . . . designed to fund the purchase of a single apartment complex," and were "more comfortably categorized as a single

12

execution of a scheme rather than as twenty-some-odd separate executions of a scheme." *Id.* at 303.

In *Lemons*, the defendant, an officer at a savings and loan, was charged with nine counts of bank fraud for his involvement in a scheme to defraud the savings and loan by funding a loan larger than the purchase price of the collateral and by authorizing an assignment fee from the loan funds, from which he was to receive $212,000. 266 F.3d at 310-12. The court found that defendant's convictions on counts three through eight, which charged the defendant with receiving various amounts of money or debt forgiveness to pay the $212,000 assignment fee, were multiplicitous because "there was but one scheme and one execution. The movement of the benefit to Lemons, although in separate stages or acts, was only part of but one performance, one completion, one execution of that scheme." *Id.* at 313, 318.

In *United States v. Heath*, 970 F.2d 1397 (5th Cir. 1992), the court found that the indictment sought to punish the defendant "for execution of the multiple steps involved in the scheme" by charging the defendant with bank fraud in two counts, even though the counts involved two separate but related loans for purchases of property in Arizona and Florida. *Id.* at 1401-02. The court explained that the counts were multiplicitous because "[t]he instant scheme involves intent to defraud only one bank," and "[t]he two loans were integrally related; one could not

13

have succeeded without the other.  Indeed, the sale of the Phoenix property was conceived for the sole purpose of facilitating the Florida sale." *Id.* at 1402.

Decisions concluding that multiple bank fraud counts properly charged multiple executions of the scheme to defraud are easily distinguishable from this case.  *See, e.g.*, *Sirang*, 70 F.3d at 590, 596 (finding four counts of bank fraud based on four checks the defendant wrote knowing he did not have the money to cover them not to be multiplicitous); *Brandon*, 17 F.3d at 421-23 (noting that "[e]ach time an identifiable sum of money is obtained by a specific fraudulent transaction, there is likely to be a separate execution of the scheme to defraud" and finding that each fraudulent loan application was a separate execution of the scheme to defraud); *Barnhart*, 979 F.2d at 649, 651 (finding multiple bank fraud counts not multiplicitous where each count was based on separate loans the defendant planned "to not repay with the money that was designated for that purpose" and noting that it was "more similar to [a] check-kiting scheme" than "a scheme to obtain a certain amount of funds or to obtain financing for a particular transaction").

Instead, the decisions in cases such as *Lilly*, *Lemons*, and *Heath* support the conclusion that the Superseding Indictment in this case alleges "but one scheme and one execution," i.e., the scheme to defraud First Coweta Bank to transfer more than $1.4 million dollars to Defendant's control on April 19, 2007 for purposes

14

other than the construction of the Jackson Street project used as collateral for the loan. "[A]lthough the acts charged in counts [3-7] were in furtherance of the scheme, there was but one execution of the scheme." *Lemons*, 941 F.2d at 318.

The Government argues, however, that "Counts 3, 4, and, 5 involve separate movements of money or funds away from the bank and to the control of defendant Williams," and "each created a separate financial risk for First Coweta Bank and therefore constitute separate executions of the scheme to defraud." (Doc. 69 at 8-9). Persuasive authority indicates otherwise. Counts 3, 4, and 5 allege that Defendant used the loan proceeds intended for the Jackson Street project for other purposes, including using $1,190,343.30 to pay a debt Defendant and UIM owed to NBank on April 19, 2007 (Count 3), and transferring $10,000 and $50,000 to Defendant's personal account on April 20, 2007 (Counts 4 and 5). In *United States v. Charles*, No. 13-50233, 2015 U.S. App. LEXIS 16875 (9th Cir. Sept. 23, 2015), the court found that the indictment and proof at trial "support[ed] four executions of the scheme, one for each of the four lines of credit that was fraudulently obtained and depleted by Charles and various of his co-schemers." *Id.* at *2. The court further found, however, that "[t]he additional nine counts of bank fraud, which charged individual withdrawals from the four lines of credit, do not amount to separate executions of the scheme, but are 'act[s] in furtherance of [the] scheme to defraud.'" *Id.* (quoting *Molinaro*, 11 F.3d at 860). The court explained, "Each

15

withdrawal 'depending on the [fraudulently obtained lines of credit] for its existence'; did not involved 'a new and independent obligation to be truthful'; and did not create a new and independent risk for the banks." *Id.* (quoting *Molinaro*, 11 F.3d at 860 and n.16). Thus, the court found the additional nine counts relating to the withdrawals from the lines of credit to be multiplicitous. *Id.*

Similarly here, the allegation that Defendant caused forged documents to be transmitted to First Coweta to obtain loan proceeds on April 19, 2007 supports execution of the scheme to defraud the Bank, but as found in *Charles*, Defendant's alleged subsequent "withdrawals" from those proceeds were "acts in furtherance of the scheme to defraud," not separate executions of the scheme. *Charles*, 2015 U.S. App. LEXIS 16875, at *2; *see also Lemons*, 941 F.2d at 318 ("The movement of the benefit to Lemons, although in several stages or acts, was only part of but one performance, one completion, one execution of that scheme."). Nor did Defendant's alleged subsequent use of those funds for her own purposes create a separate financial risk for the Bank, as explained in *United States v. McMath*, a case cited by the Government (*see* Doc. 69 at 4, 9). In *McMath*, the court explained, "Each time defendants caused the bank to issue loans under false and fraudulent pretenses, they 'created a separate financial risk for the financial institution.' " *McMath*, No. CR413-003, 2013 U.S. Dist. LEXIS 157314, at *21 (S.D. Ga. Oct. 16, 2013) (quoting *De La Mata*, 266 F.3d at 1288). "It is 'the

16

making of material misrepresentations during [the loan] process' that constitutes bank fraud; how the 'ill-gotten gains' are spent is not part of the scheme." *Id.* at *21-22 (quoting *United States v. Adkinson*, 158 F.3d 1147, 1160 & n.23 (11th Cir. 1998) and citing *United States v. Gregg*, 179 F.3d 1312, 1315-16 (11th Cir. 1999) and *United States v. Lee*, 232 F.3d 556, 559 (7th Cir. 2000) for proposition that bank fraud is complete when bank makes funds available for defendant's use or transfers control of money to defendant).

As to Counts 6 and 7, the Government asserts that "[t]he Eleventh Circuit has recognized that a lulling action can qualify as a separate 'execution' of a bank fraud scheme," citing *Sirang*, 70 F.3d at 595-96.  (Doc. 69 at 10).  Those counts allege that on November 14, 2007 and November 15, 2007, Defendant caused emails to be sent to First Coweta Bank which "falsely and fraudulently" represented the status of the Jackson Street project.  In *Sirang*, the court rejected the defendant's contention that one of the counts of bank fraud—based on the defendant's submission of a $600,000 cashier's check to C & S Bank in order to obtain the release of funds from C & S—"cannot be characterized as fraud" because "[t]he evidence at trial supported the inference that Sirang made this deposit to pacify C & S and thereby lull the bank into paying the E.F. Hutton checks which would be presented later than day."  70 F.3d at 591, 596.  Those facts are distinguishable from the allegations in Counts 6 and 7, however, because

here, Defendant is alleged to have made the false and fraudulent representations to the Bank about the progress of the Jackson Street project after having already obtained the loan proceeds from the Bank. As discussed below, such lulling actions—taken after the receipt of the proceeds of the fraud—are more properly viewed as taken in furtherance of the scheme to defraud rather than separate executions.

The Government also cites *United States v. Lane*, 474 U.S. 438 (1986) in support of its assertions that the "lulling emails" alleged in Counts 6 and 7 constitute separate executions of the scheme to defraud the Bank. (Doc. 69 at 10). In *Lane*, the Court rejected the defendants' challenge to the sufficiency of the evidence to sustain their convictions for wire fraud based on mailings that occurred after the receipt of the goods obtained by fraud. *Id.* at 451. The Court explained that "[t]o find a violation of the mail fraud statute, 18 U.S.C. § 1341, the charged 'mailings' must be 'for the purpose of executing the scheme.' " *Id.* (quoting *Kann v. United States*, 323 U.S. 88, 94 (1944)). "Mailings occurring after receipt of the goods obtained by fraud are within the statute if they 'were designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place.' " *Id.* (quoting *United States v. Maze*, 414 U.S. 395, 403 (1974)). The Court then found that even though the fraudulent mailings

18

charged in Counts 2 through 4 occurred after receipt of insurance proceeds, "the jury could have reasonably found that the scheme was not completed until the final mailing on September 18, 1980, charged in Count 4, because that mailing was intended (as were the two earlier ones) to 'lull' the insurer into a false sense of security." *Id.* at 452.  That case does not support the Government's contention that the "lulling emails" charged in Counts 6 and 7 were "separate executions" of the alleged scheme to defraud First Coweta Bank.

In the first place, although the bank fraud statute, 18 U.S.C. § 1344, was modeled on the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, "the mail and wire fraud statutes punish each act in furtherance, or execution, of the scheme; but the bank fraud statute imposes punishment only for each execution of the scheme." *Lemons*, 941 F.2d at 318; *see also Lilly*, 983 F.2d at 303-04 and n.8 (acknowledging that "the language in these three statutes is similar, and . . . the legislative history suggests that Congress modeled the bank fraud statute on the [mail and wire fraud] statutes," but noting that "the mail fraud statute criminalizes certain specifically enumerated actions when taken in furtherance of a scheme, while the bank fraud statute criminalizes only the execution of the scheme itself," and "[t]he same comparison can be drawn between the bank fraud and wire fraud statutes").  Thus, while separate "lulling" mailings can be charged in separate mail fraud counts as described in *Lane*, that is not the case under the bank fraud statute

19

if those mailings are merely acts in furtherance of the scheme to defraud rather than separate executions or attempted executions of the scheme.

Moreover, the Court's finding in *Lane* that the "delayed mailings at issue in [that] action were *part of an ongoing scheme to defraud*," 474 U.S. at 453 n.16 (emphasis added), undermines the Government's contention that for purposes of the bank fraud statute, the November 2007 emails were *separate* executions of the scheme to defraud First Coweta rather than acts taken in furtherance of that scheme. Other cases addressing "lulling actions" also indicate otherwise. *See, e.g.*, *United States v. Hill*, 643 F.3d 807, 859 (11th Cir. 2011) ("Under the lulling exception [with respect to the mail fraud statute's requirement that "a mailing must constitute part of the execution of the fraud"], mailings are sufficiently *part of the execution of a fraudulent scheme* if they are used to lull the scheme's victims into a false sense of security that they are not being defrauded, thereby allowing the scheme to go undetected" (emphasis added)); *United States v. Evans*, 473 F.3d 1115, 1120 (11th Cir. 2006) (explaining that, in a mail fraud case, "when the scheme includes not only obtaining the benefit of the fraud but also delaying detection of the fraud by lulling the victim after the benefit has been obtained, the scheme is not fully consummated, and does not reach fruition, until the *lulling portion of the scheme* concludes" (emphasis added)); *United States v. Allen*, 76 F.3d 1348, 1363 (5th Cir. 1996) (rejecting the defendant's contention "that actions

20

designed solely to avoid detection, if taken after the defendant had control over the money produced by the fraud, could not by definition be in furtherance of a scheme to defraud," as required by the wire fraud statute," because "both this court and the Supreme Court have recognized that actions taken to avoid detection, or to lull the fraud victim into complacency, *can further the fraud*, even after the victim has ceded the funds or goods to the perpetrator's control" (citing *inter alia Maze*, 414 U.S. at 402-03).

The Government also contends that Counts 6 and 7 constitute separate executions of the scheme to defraud the Bank "because each involved a 'new and independent obligation to be truthful' to the bank concerning the status of the bank's collateral." (Doc. 69 at 12 (citing *Sirang*, 70 F.3d at 596)). The undersigned disagrees. *See, e.g.*, *Molinaro*, 11 F.3d at 860 (finding that counts charging the defendant with bank fraud based on the false listing of borrowers on loans used as collateral to make it appear that they, and not defendant, were the purchasers of property were multiplicitous because "the record entries involved in [counts 23 through 28] do not constitute a new transaction; they were made solely to conceal [one of the defendant's] role in the transaction involved in" counts 17 through 22 involving the transfer of real property to that defendant, "which had already been consummated").

21

Finally, the Government asserts that "[i]t is proper to charge multiple executions of a single scheme where the counts involve different documents and thus different proof is required as to each count." (Doc. 69 at 12). The Government cites *United States v. Davis*, 730 F.2d 669 (11th Cir. 1984) for the proposition that the court "reject[ed the defendant's] argument that bank fraud counts were multiplicitous where the defendant was charged with making false statements *in several different documents*, all of which were submitted for the purposes of procuring a single loan." (Doc. 69 at 12). *Davis* did not involve violations of the bank fraud statute, 18 U.S.C. § 1344, however. Instead, the defendant was charged with and convicted "of four counts of making false representations to a federally insured bank in violation of 18 U.S.C. § 1014," the federal false statements statute. *Davis*, 730 F.2d at 670-71. The court rejected the defendant's argument "that all four counts of the indictment should have been charged as a single offense since Counts One and Two relate to the same loan and Counts Three and Four are merely extensions of that loan" because each of the false statements alleged "constitute separate and distinct acts for the purpose of 18 U.S.C. § 1014 because different proof is required to establish the falsity of each document." *Id.* at 672. While separate false statements relating to the same loan may be sufficient to support separate counts under § 1014, Defendant is charged with executing and attempting to execute a scheme to defraud First Coweta Bank

22

in violation of § 1344, which does not allow the charging of acts taken in furtherance of that scheme—as opposed to separate executions of the scheme—to be charged as separate offenses. *De La Mata*, 266 F.3d at 1287; *see also United States v. Dupre*, 117 F.3d 810, 818 (5th Cir. 1997) (explaining that "bank fraud under § 1344 requires proof of a 'scheme or artifice' to defraud or to obtain property from a federally insured financial institution" while "[t]here is no 'scheme or artifice' requirement in section 1014" and "no requirement that the person charged with bank fraud make a false statement to an insured bank" (internal quotations omitted)).

In summary, when the allegations set forth in the Superseding Indictment, are "objectively viewed," while Count 2 alleges a separate execution of the scheme to defraud First Coweta Bank, Counts 3 through 7 do not; instead, they "relate to a single execution of a unitary scheme" and are therefore multiplicitous. *Lilly*, 983 F.2d at 303. Having found that those counts are multiplicitous, the undersigned must consider the appropriate remedy. Although Defendant has moved to dismiss the Superseding Indictment (*see* Doc. 65), "multiplicity in the indictment does not require the entire indictment to be dismissed; instead the appropriate remedy for multiplicity calls for consolidating a multiplicitous charge into one count, or issuing special instructions for the jury." *United States v. Bobo*, No. 1:06-CR-0172-02-TWT-CCH, 2007 U.S. Dist. LEXIS 27124, at *13 (N.D. Ga. Feb. 20,

2007).   "Thus, if the Indictment in this case were indeed multiplicitous, Defendant's requested dismissal would not be the appropriate way to remedy that error."   *Id.*   Accordingly, the undersigned **RECOMMENDS** that Defendant's motion to dismiss be **DENIED**.   Instead, the undersigned **RECOMMENDS** that Counts 3 through 7 be **CONSOLIDATED** with Count 2 into one bank fraud count.

## II.   Motion To Strike Surplusage

Defendant also moves to strike the phrase "and by the omission of material facts" in Counts One through Seven as surplusage pursuant to Rules 7(d) and 12(b)(3)(B) because according to Defendant that phrase is erroneously included as an element of 18 U.S.C. § 1344 in those counts.  (Doc. 65 at 5).

Rule 7(d) provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment."   *See* FED. R. CRIM. P. 7(d).   In this circuit, however, "[a] motion to strike surplusage from an indictment should not be granted unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial.  This is a most exacting standard." *United States v. Awan*, 966 F.2d 1415, 1426 (11th Cir. 1992) (internal quotation omitted).

The Superseding Indictment charges that Defendant "knowingly executed and attempted to execute a scheme and artifice to defraud First Coweta Bank, and to obtain moneys and funds owned by First Coweta Bank, by means of materially

false and fraudulent pretenses, representations, and promises" (*see* Doc. 58 at ¶¶ 1, 17), which tracks the language of the statute, *see* 18 U.S.C. § 1344, but then adds "and by the omission of material facts" (*see* Doc. 58 at ¶¶ 1, 17), language which is not included in the statute.  Defendant contends including that extra language "is prejudicial as it erroneously infers 'by the omission of material facts' is an element of 18 U.S.C. § 1344(d) and, thus, is misleading to and/or will create confusion for the jury as to the elements of 18 U.S.C. § 1344(2)."  (Doc. 73 at 6).   The Government counters that "the Eleventh Circuit has repeatedly held that a scheme to defraud can be proved by either 'material misrepresentations, or the omission or concealment of material facts.' "  (Doc. 69 at 14 (quoting *United States v. Hassan*, 333 F.3d 1264, 1270-71 (11th Cir. 2003))).

In *Hassan*, the court considered the sufficiency of the evidence to convict the defendant of wire fraud under 18 U.S.C. § 1343, which requires "intentional participation in a scheme to defraud" and "use of the interstate wires in furtherance of the scheme."  *Hassan*, 333 F.3d at 1270.  The court wrote, "A scheme to defraud requires proof of material misrepresentations, *or the omission or concealment of material facts*, *Neder v. United States*, 527 U.S. 1, 25 . . . (1999), reasonably calculated to deceive persons of ordinary prudence, *United States v. Brown*, 79 F.3d 1550, 1557 (11th Cir. 1996) (construing the mail fraud statute)."  *Hassan*, 333 F.3d at 1270-71 (emphasis added).   The court further explained that "not all

25

misrepresentations or omissions constitute a scheme to defraud; the misrepresentation or omission must be material and it must be one on which a person of ordinary prudence would rely." *Id.* at 1271. In *United States v. Forehand*, another case cited by the Government, the court found sufficient evidence "to demonstrate that Forehand had the requisite intent required for wire fraud" where the evidence "demonstrated that [he] personally and repeatedly misrepresented *or omitted material facts* in an attempt to influence investors to invest in his scheme." 577 Fed. Appx. 942, 945 (11th Cir. 2014) (emphasis added).

Thus, even though "omission of material facts" is not included in the language of 18 U.S.C. § 1344, it appears that evidence of "the omission of material facts" can support an element of that statute, i.e., a scheme to defraud. Therefore, the undersigned finds that Defendant's motion to strike is premature. She has not shown that the objected to language is irrelevant, prejudicial, or inflammatory. If at trial the Government fails to provide factual support for allegations relating to "the omission of material facts," or that language is otherwise found to be irrelevant to the charged offenses, Defendant may then move to strike the language before the indictment is read or given to the jury. *See Awan*, 966 F.2d at 1426 (explaining that "it is proper to reserve ruling on a motion to strike surplusage until the trial court has heard evidence that will establish the relevance of the allegedly

surplus language"). Accordingly, it is **RECOMMENDED** that Defendant's motion to strike surplusage (Doc. 65) be **DENIED without prejudice** to her right to renew the motion at trial.

### Summary

Because the undersigned finds that Counts 3 through 7 of the Superseding Indictment are multiplicitous, it is **RECOMMENDED** that those counts be **CONSOLIDATED** with Count 2 into one count and that Defendant's motion to dismiss the Superseding Indictment (Doc. 65) be **DENIED**.   It is further **RECOMMENDED** that Defendant's motion to strike surplusage (Doc. 65) be **DENIED without prejudice**.

**IT IS SO REPORTED AND RECOMMENDED** this 27th day of October, 2015.

  /s/ *J. CLAY FULLER*
J. CLAY FULLER
United States Magistrate Judge

27